# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2476
_____

| | |
|---|---|
| Thomas A. Wootten, | * |
| | * |
|     Appellant, | * |
| | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri. |
| Fisher Investments, Inc.; Fisher Asset | * |
| Management, LLC, dba Fisher | * |
| Investments, Inc.; Kenneth Fisher; | * |
| Matthew Goldhaber; Michael Weston, | * |
| | * |
|     Appellees. | * |

_____

Submitted: March 14, 2012
Filed: July 26, 2012
_____

Before MELLOY, SMITH and SHEPHERD, Circuit Judges.
_____

SMITH, Circuit Judge.

    Thomas A. Wootten initiated an arbitration against his former investment advisor, Fisher Investments, Inc. ("Fisher Investments"). During the arbitration, Fisher Investments moved to dismiss Wootten's Missouri statutory claims based on the arbitration agreement's Delaware choice-of-law provision. Ruling on Fisher Investments' motion, the arbitrator dismissed Wootten's Missouri statutory claims and sua sponte prohibited Wootten from adding a federal securities law claim. Wootten then filed a civil action against Fisher Investments in the United States District Court

for the Eastern District of Missouri, re-alleging the Missouri statutory and federal securities law claims and seeking a declaration that the arbitration agreement was void. The district court[1] dismissed Wootten's claims without prejudice, deciding that Wootten had to complete arbitration before he could pursue remedies in federal court. We affirm.

## I. *Background*

Wootten, a former insurance agent, sought investment options for his retirement savings. In September 2007, after receiving marketing materials from Fisher Investments, Wootten met with Fisher Investments's Vice President Matthew Goldhaber. Subsequently, on September 11, 2007 Wootten signed a written Letter of Agreement (LOA), which acknowledged Wootten's retention of Fisher Investments as his investment advisor. The LOA contained choice-of-law and arbitration provisions, which stated:

> 13. GOVERNING LAW.
>
> This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without giving effect to any conflict or choice of law provisions.
>
> * * *
>
> 18. PROBLEMS AND DISPUTES; ARBITRATION.
>
> * * *
>
> Any dispute, claim or controversy arising out of this Agreement or otherwise between Fisher and the Client, including but not limited to the breach, termination, enforcement, interpretation or validity of this

---

[1] The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

>Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph shall be determined by arbitration before the Judicial Arbitration and Mediation Service ("JAMS") office closest to the Client's principal place of residence before one arbitrator who shall be a retired judicial officer. Any claim asserted by the Client will not be joined, for any purpose, with the claim or claims of any other person or entity. The arbitration shall be administered by JAMS pursuant to the Comprehensive Arbitration Rules and Procedures. The laws of the State of Delaware shall govern the substantive rights of the parties. The arbitration shall be final and binding, and judgment on the award may be entered in any court having jurisdiction. Client understands that by agreeing to arbitration, the Client is waiving all rights to seek remedies in court, unless otherwise mandated by federal or state securities laws. This clause will not prohibit the parties from seeking provisional remedies in any court of competent jurisdiction. This paragraph shall survive termination of this Agreement.

After executing the LOA, Fisher Investments assigned Michael Weston to Wootten's account as his investment counselor. At the time, unbeknownst to Wootten, Weston was not licensed or registered as an investment advisor as required by law. Wootten followed Weston's suggested investment strategy and did not diversify his portfolio but instead invested all of his money in equities.

In May 2008, Wootten called Weston with concerns about events in the marketplace and inquired about Fisher Investments's intended response. Weston attempted to allay Wootten's fears and suggested that, despite market jitters, Wootten would still see a positive return on his investments. In July 2008, Wootten again called Weston, concerned by mounting losses in his account with Fisher Investments. Weston again expressed confidence in the original investment strategy and expressed that Wootten did not need to assume a defensive stance at the time. On September 29, 2008, Fisher Investments sent a message to all of its clients stating, "now more than ever we urge you to exercise continued patience." In response, Wootten sent Weston a written complaint, demanding a formal review of the suitability of the recommended

portfolio. Fisher Investments responded to this letter, denying responsibility for Wootten's losses. Wootten then wrote Fisher Investments' Chief Compliance Officer, Tom Fishel, requesting reparation for his losses. Fishel rejected Wootten's request for reparations. In November 2008, after suffering $316,000 in losses, Wootten liquidated his retirement account with Fisher Investments.

In October 2008, Wootten sought arbitration against Fisher Investments with the Judicial Arbitration and Mediation Services (JAMS). The parties engaged in written discovery, produced documents, and deposed potential witnesses. In late 2009, Wootten filed a motion in the arbitration, seeking leave to amend to add an additional Missouri Securities Act count. Fisher Investments opposed Wootten's motion and moved to dismiss all of his Missouri statutory claims based on the LOA's Delaware choice-of-law provision. In response, Wootten challenged the enforceability of the LOA's arbitration provision.

On December 10, 2009, the arbitrator dismissed Wootten's Missouri statutory claims based on the Delaware choice-of-law provision. The arbitrator ruled that

> [t]he parties entered into a written letter of Agreement ("LOA") with two choice of law provisions that require the application of Delaware law. If we find that the choice of law provisions in the LOA are valid and enforceable, then Claimant's Missouri claims cannot stand.
>
> * * *
>
> Accordingly, the law of Delaware, alone, will be applied to govern the dispute between Claimant and Respondent and their respective substantive rights.

After the arbitrator's ruling, Wootten filed a motion to reconsider. On March 19, 2010, the arbitrator denied Wootten's motion to reconsider and sua sponte prohibited

Wootten from adding a federal securities claim under the Investment Advisers Act of 1940 based on the Delaware choice-of-law-provision.

On April 9, 2010, while the arbitration was proceeding, Wootten filed a complaint in federal court challenging the enforceability of the arbitration provision in the LOA and asserting his dismissed Missouri and federal statutory claims. On April 27, 2010, the arbitrator stayed the arbitration proceeding pending the outcome of Wootten's federal action. Wootten then moved to enjoin the arbitration in federal court. Fisher Investments filed a motion to dismiss Wootten's federal court action in favor of arbitration. On March 31, 2011, the district court denied Wootten's motion to enjoin the arbitration and granted Fisher Investments's motion to dismiss Wootten's claims without prejudice based on the ongoing arbitration.

## II. *Discussion*

Wootten challenges the district court's dismissal of his Missouri and federal statutory claims based on the ongoing arbitration. Wootten argues that (1) the district court has jurisdiction to address his claims; (2) the arbitrator limited the scope of the arbitration agreement to only Delaware claims, thus allowing him to bring non-Delaware claims in federal court; (3) the arbitrator's interpretation of the arbitration provision renders it void; (4) Fisher Investments waived its right to arbitrate; (5) the arbitration agreement is unenforceable; (6) he did not waive his right to challenge the arbitration agreement; and (7) the LOA's provisional remedies void the LOA's arbitration provision.

### A. *Jurisdiction Over Wootten's Claims*

Wootten argues that the district court erred in finding that the district court lacked jurisdiction to adjudicate Wootten's Missouri and federal statutory claims. In response, Fisher Investments counters that the complete arbitration rule prohibits the district court from exercising jurisdiction until the arbitration is complete. "We review

the District Court's determination regarding subject matter jurisdiction de novo." *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 958 (8th Cir. 2009).

"For an arbitration to be final and therefore federal court jurisdiction to be proper, there must be a 'complete arbitration.' Some courts have called this the 'complete arbitration' rule." *Local 36, Sheet Metal Workers Int'l Ass'n. AFL-CIO v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949–50 (8th Cir. 1992) (citation omitted). "Whether [an arbitration] award indicates that [it] is final and whether the arbitrator intended the award to be final are factors in determining if an arbitration award is final." *Id.* at 949.

Wootten argues that the complete arbitration rule does not apply in this case because he is not challenging an arbitrator's interim decision. Wootten asserts that the arbitrator made a final determination by limiting the scope of the arbitration to only Delaware claims. According to Wootten, that final determination on the arbitration's scope is immediately appealable. But reviewing the arbitrator's decision, we conclude otherwise. The arbitrator found that the parties agreed that "the law of Delaware, alone, will be applied to govern the dispute between Claimant and Respondent and their respective substantive rights." In doing so, the arbitrator interpreted the arbitration provision of the LOA to only allow Delaware law to establish and govern the parties' substantive rights for any dispute arising from their relationship. Because the ruling simply decided the substantive rights of the parities during the arbitration, we find that Wootten is challenging an interim ruling and thus the complete arbitration rule applies. *See id.* Because the complete arbitration rule applies, the district court did not err in deciding that it did not have jurisdiction to adjudicate Wootten's claims.

B. *Wootten's Claims Filed In Federal Court*

Wootten next argues the arbitrator's interpretation of the LOA's arbitration provision permits him to bring his Missouri and federal law statutory claims in federal

court. Specifically, Wootten argues that the arbitrator's interpretation of the LOA's choice-of-law provision and choice-of-forum provision act in tandem to prevent Wootten from pursuing his Missouri and federal statutory claims in arbitration. Consequently, the LOA implicitly allows him to bring those claims in federal court notwithstanding the ongoing arbitration proceedings. "We review a district court's interpretation of a contractual arbitration provision de novo." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499 (8th Cir. 2007).

As expressed above, we find that Wootten is appealing the arbitrator's interim decision as to the parties' substantive rights. *See* Part II. A. As such, we find that the complete arbitration rule applies, and Wootten must fully arbitrate his claims before he may ask a federal court to review the arbitrator's decision regarding a dispute covered by the arbitration agreement. Thus, we find that the district court did not err in requiring Wootten to fully arbitrate his claims before proceeding to a judicial forum.

### C. *Pubic Policy Concerns*

Wootten argues that the arbitration agreement is void as against public policy because it precludes Wootten's Missouri and federal statutory claims. We review a district court's dismissal in favor of an ongoing arbitration de novo. *See Green v. SuperShuttle Int'l., Inc.*, 653 F.3d 766, 768 (8th Cir. 2011).

Federal courts have expressed concern when an arbitration agreement limits statutory rights. We have said that "[a]rbitration agreements encompassing federal statutory claims are enforceable as long as the potential litigant can effectively vindicate her statutory rights through arbitration." *E.E.O.C. v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007). Similarly, where a choice-of-law provision sought to curtail a party's rights under federal antitrust laws, the Supreme Court noted in dicta "that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory

-7-

remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).

Wootten correctly notes that federal courts have frowned upon arbitration agreements that preclude important statutory remedies; however, when the complete arbitration rule applies, available federal court remedies must wait their turn. This is especially so here where the parties have committed to the arbitrator the determination of whether the LOA's arbitration provisions are valid. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010) (deciding that the arbitrator must decide the enforceability of the agreement where the parties agreed to arbitrate the enforceability of the arbitration agreement).[2] Thus, while Wootten may have valid federal claims, he must complete the arbitration before a court can hear those claims.

### D. *Waiver by Fisher Investments*

Wootten also argues that Fisher Investments waived its right to arbitrate by acting inconsistently with the arbitrative process. "We review the question of waiver de novo." *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991).

---

[2]The LOA states in relevant part:

> Any dispute, claim or controversy arising out of this Agreement or otherwise between Fisher and the Client, including but not limited to the breach, termination, enforcement, interpretation or validity of this Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph shall be determined by arbitration before the Judicial Arbitration and Mediation Service . . . .

As explained in Section II.E below, we read this language to require that the arbitrator decide the enforceability of the arbitration provision.

"To prove [Fisher] waived its right to arbitration, [Wootten] must show: (1) [Fisher Investments] knew of an existing right to arbitration; (2) [Fisher Investments] acted inconsistently with that right; and (3) [Fisher Investment]'s inconsistent acts prejudiced [Wootten]." *Id.*

Wootten argues that Fisher Investments waived its right to arbitrate by withholding material evidence, committing perjury, and refusing to comply with JAMS rules. Wootten relies on *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999). We find that case inapposite and thus not persuasive. In *Hooters*, a former employee complaining of sexual harassment threatened to sue Hooters. *Id.* at 935. Hooters preemptively filed a motion to compel arbitration under the Federal Arbitration Act. *Id.* The district court denied Hooters's motion, finding that Hooters's promise to arbitrate was illusory because of the conditions it set for arbitration. *Id.* at 936. Affirming, the Fourth Circuit found that "Hooters materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." *Id.* at 938.

Here, while Fisher Investments's alleged dilatory actions, if true, are regrettable, Fisher Investments has nonetheless continued to participate in the arbitration. Ultimately, Wootten received many, if not all, of the requested documents and deposed Fisher Investments employees. Under these facts, we conclude that Fisher Investments did not act inconsistently with the right to arbitrate and, thus, did not waive its right to arbitrate.

### E. *Enforceability of the LOA's Arbitration Provision*

Wootten argues that the district court erred by failing to evaluate the enforceability of the LOA's arbitration provision. Fisher Investments counters that the LOA's arbitration provision requires that the arbitrator decide the enforceability of the

arbitration agreement. We review de novo a district court's decision to dismiss in favor of an ongoing arbitration. *See Green*, 653 F.3d at 768.

In *Rent-A-Center v. Jackson*, the United States Supreme Court decided "whether, under the Federal Arbitration Act . . ., a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." 130 S. Ct. at 2775. The Court held that, where the parties agree to arbitrate the enforceability of the arbitration agreement, federal courts must allow the arbitrator to determine that threshold issue first. *Id.* at 2777–78.[3] Even before *Rent-A-Center*, this circuit held that federal courts should defer the question of arbitrability to the arbitrator where the court finds "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009).

Here, the LOA's arbitration provision states in relevant part:

> Any dispute, claim or controversy arising out of this Agreement or otherwise between Fisher and the Client, including but not limited to the breach, termination, enforcement, interpretation or validity of this Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph shall be determined by arbitration before the Judicial Arbitration and Mediation Service . . . .

We read this language to be "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Id.* As such, the district court did not err in declining to rule on the arbitrability of the LOA's arbitration provision.

---

[3] An exception exists where a party "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Center*, 130 S.Ct. at 2777–78.

-10-

F. *Wootten's Waiver of the Right to Challenge Arbitrability*

Wootten next argues that the district court erred in finding that he waived his right to challenge the validity of the arbitration proceeding. "We review the question of waiver de novo." *Stifel, Nicolaus & Co.*, 924 F.2d at 158.

Assuming that Wootten did not waive his ability to challenge the validity of the arbitration proceeding, as decided above, Wootten must first present that challenge to the arbitrator. Because the arbitrator has not yet decided whether the LOA's arbitration provision is enforceable, Wootten's challenge in federal court is premature. *See Local 36, Sheet Metal Workers Int'l Ass'n. AFL-CIO*, 951 F.2d at 949–50.

G. *Provisional Remedies Clause Applicability*

Finally, Wootten argues that the district court erred in not applying the provisional remedies in the LOA. Specifically, Wootten argues that the LOA allows the federal court to declare the LOA's arbitration provision unenforceable. "We review a district court's interpretation of a contractual arbitration provision de novo." *Hudson*, 484 F.3d at 499.

The LOA's arbitration provision states, "This clause will not prohibit the parties from seeking provisional remedies in any court of competent jurisdiction." Wootten argues that this language "specifically allows for the court to evaluate the validity of the arbitration provision in light of the Arbitrator's Orders precluding [his] statutory claims." We disagree. We need not decide the meaning of the provisional remedies provision because we find that the LOA's unambiguous language is at odds with Wootten's interpretation. Specifically, the agreement provides that "breach, termination, enforcement, interpretation or validity of this Agreement and the scope and applicability of the agreement to arbitrate contained in this paragraph shall be determined by arbitration before the Judicial Arbitration and Mediation Service." Wootten invites us to ignore this language to allow a court to decide the enforceability of the LOA's arbitration provision. We decline Wootten's invitation and find that the

-11-

district court did not err in refusing to interpret the LOA's provisional remedies provision to override the express language that requires that the arbitrator decide the agreement's enforceability.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 26, 2012

Mr. David B. Cosgrove
COSGROVE LAW
1401 S. Brentwood Boulevard
Suite 560
St. Louis, MO  63144

RE:  11-2476  Thomas Wootten v. Fisher Investments, Inc., et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

DMS

Enclosure(s)

cc:  Mr. Scott L. Metzger
     Mr. Kurt J. Schafers
     Mr. Robert Martin Shaughnessy
     Mr. Richard B. Walsh Jr.
     Mr. James G. Woodward
     Mr. Ronald Bradley Ziegler

District Court/Agency Case Number(s):   4:10-cv-00598-SNLJ

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 26, 2012

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  11-2476  Thomas Wootten v. Fisher Investments, Inc., et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was David B. Cosgrove, of St. Louis, MO.

Counsel who presented argument on behalf of the appellee was Scott L. Metzger, of San Diego, CA. The following attorney(s) appeared on the appellee brief:   Robert Martin Shaughnessy, of San Diego, CA;  Richard B. Walsh, Jr. and R. Brad Ziegler, both of St. Louis, MO.

The judge who heard the case in the district court was Honorable Stephen N. Limbaugh, Jr.. The judgment of the district court was entered on June 9, 2011.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

DMS

Enclosure(s)

cc:   Lois Law
       MO Lawyers Weekly

District Court/Agency Case Number(s):   4:10-cv-00598-SNLJ